IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    ) Chapter 11
JODENE AUDREY PUFF,                 )
                                    ) Bankruptcy No. 10-01877
                                    )
         Debtor.                    )

**ORDER RE: DEBTOR'S MOTIONS TO ENTER INTO LEASES OF REAL PROPERTY, CREDITOR'S MOTION FOR ORDER OF PAYMENT FROM CASH COLLATERAL**

These matters came before the undersigned at an evidentiary hearing on October 27, 2010. Three matters were before the Court. Debtor Jodene Audrey Puff brought two separate Motions to Enter into Leases of Real Property. Creditor Farmers Savings Bank (Colesburg) ("FSB-C") objected to the proposed leases and moved for an Order of Payment from Cash Collateral. Both the Debtor and Creditor, United States of America-Farm Service Agency ("FSA") filed Objections to FSB-C's Motion for Payment from Cash Collateral. Attorney Robert Gainer appeared on behalf of Debtor. Attorney John Freund appeared on behalf of FSB-C. Assistant U.S. Attorney Lawrence Kudej appeared on behalf of FSA. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M).

**STATEMENT OF THE CASE**

Ms. Puff filed for Chapter 11 bankruptcy protection on July 1, 2010. On September 13, 2010, she filed two Motions, each proposing to enter into a lease with respect to real property in her possession. FSB-C objected and argued the proposed rental amount in both leases was insufficient. FSB-C also argued that Debtor has not provided evidence she actively marketed the

real property or otherwise has shown that the rents are the highest possible market rates. FSB-C also separately requested the Court to enter an order providing for a cash collateral payment to FSB-C. After hearing the evidence and arguments, the Court will approve the proposed leases and deny FSB-C's request for a payment from cash collateral.

## PROCEDURAL BACKGROUND

### 1. Debtor's Two Motions to Enter into Leases of Real Property

On September 13, 2010, Debtor filed two Motions, each proposing a lease with respect to real property in her possession. The first Motion requested Court approval of a one-year term lease of a machine shed property to John Shannon at the rate of $200/month. The second Motion requested Court approval of a proposed one-year term lease of a restaurant property to Amy Williams at the rate of $400/month. On October 5, 2010, FSB-C filed an Objection to approval of both of Debtor's proposed leases. FSB-C objected to the proposed rental amount in each lease. FSB-C argued Debtor failed to actively market the real property, which resulted in rents below market rates. FSB-C also pointed out the proposed tenants are the Debtor's brother and brother's girlfriend, respectively, and argued that the leases were likely not negotiated at arm's length and should be rejected.

### 2. FSB-C's Motion for Order of Payment from Cash Collateral

FSB-C filed a Motion for Order of Payment from Cash Collateral on October 1, 2010. FSB-C's Motion refers to and purports to be based on several earlier events and procedural matters relating to cash collateral. On July 16, 2010, Debtor filed an Expedited Motion to Authorize Interim Use of Cash Collateral. That Motion stated: "Debtor is uncertain to the extent of any interest either Farmers Savings Bank of Colesburg, Iowa, or Wells Fargo Financial

2

Leasing, has in proceeds due Jodene Puff from an Independent Contractor Agreement on a finishing facility she owns." As a prerequisite to ordering Debtor to make adequate protection payments, Debtor requested the Court to make a determination about the respective interest of FSB-C and Wells Fargo Financial Leasing in the proceeds of Debtor's hog finishing operation. FSB-C did not file an objection to Debtor's July 16 Motion.

The Court heard the Cash Collateral Motion on July 22, 2010. FSB-C did not appear at the hearing. At the hearing, the Court found that a determination regarding the disputed status of FSB-C's potential interest would be too extensive for the purpose of determining authorization to use cash collateral on an interim basis. The Court did not make a final determination about the interest of FSB-C. The Court expressly reserved to FSB-C an opportunity to conduct a subsequent hearing to obtain a final determination of its status.

The Court issued an Order on the July 16 Motion on July 22, 2010. Under an agreement between Wells Fargo Financial Leasing and Debtor, the Order authorized monthly adequate protection payments to Wells Fargo. The Order did not provide for any adequate protection payment to FSB-C.

In the Motion FSB-C filed on October 1, 2010, it sought "cash collateral" payments to it. FSB-C argued that the Court already "granted" the Debtor's Motion to Authorize Interim Use of Cash Collateral and thus believed it was entitled to a cash collateral distribution under that Order. FSB-C also claimed that it was entitled to a payment for its security interest on a grain bin owed by the Debtor. FSB-C did not cite a provision in the Bankruptcy Code or a judicial opinion as the basis for that claim.  It simply proceeded on the belief that Debtor had received a payment on the grain bin and FSB-C was entitled to that money.

3

On October 14, 2010, FSA objected to FSB-C's October 1 Motion. FSA asserted a first security interest in a single grain bin. FSA described the location of the grain bin by attaching an Exhibit.

FSB-C filed a Response to FSA's Objection on October 25, 2010. FSB-C did not dispute FSA's claim of a first security interest, and instead claimed a second security interest on that particular grain bin. FSB-C also continued to claim that it had a first security interest in two other grain bins, and filed mortgages encumbering each of those as proof.

On October 26, 2010, Debtor filed an Objection to FSB-C's October 1 Motion for "cash collateral" payments. Debtor pointed out FSB-C has never substantiated its interested in cash collateral derived from Debtor's hog finishing operation. Debtor also, more fundamentally, pointed out the Court's July 22 Order Approving Interim Use of Cash Collateral did not require Debtor to make adequate protection payments to FSB-C as FSB-C seemed to assume.

On October 27, 2010, the Court held a combined hearing on Debtors' two Motions to Enter into Leases and FSB-C's Motion for Order of Payment from Cash Collateral.

**FINDINGS OF FACT**

Debtor testified about the negotiation and terms of each lease. The first proposed lease to Debtor's brother, John Shannon, was for a machine shed. The lease provided that in addition to $200 in monthly rent, John Shannon would be responsible for all utilities and snow removal. Debtor estimated that heating the machine shed could cost roughly $1000/year. She estimated other utilities could cost roughly $100-200/year depending on what was stored in the shed. Debtor also testified that Shannon had agreed to install heaters and finish the electrical system.

4

The proposed lease attached to Debtor's motion does not specifically provide for those expenses, but does allocate to tenant "other costs necessary for storage in the Machine Shed."

The second proposed lease is for a one-year term for a restaurant property to Debtor's brother's girlfriend, Amy Williams. The lease proposes rent of $400/month. The lease allocates costs to Williams for utilities, permits, and "other costs necessary to operate a restaurant on the premises, including general liability insurance." Debtor had previously attempted to lease the restaurant property at roughly $600-650/month. Debtor had worked with FSB-C on that attempt but it fell through when the potential tenant passed away unexpectedly. Debtor has not "formally" marketed the property in the mean time. She instead has relied on word of mouth to get a tenant. Debtor priced the lease at a lower monthly rate to ease the startup expenses for her tenant. She would consider raising the rent after the term expired. She arrived at this lower initial rental figure after discussing it with many different people.

Debtor testified that the estate was not receiving income from either property prior to filing her two motions containing the proposed leases. She did not have any other prospects for tenants supplied by FSB-C.

FSB-C Senior Vice President, Michael Funke, testified for FSB-C. He first addressed the machine shed lease. He "estimated" the cost to construct the machine shed to be between $70,000-80,000. He believed the proposed $200/month rent would not even cover the cost of that capital. Funke admitted, however, he did not know the actual cost of construction. He said he "bounced" numbers off of a realtor and he got the sense that there could be a market for the property at $350/month if advertised.

On the restaurant lease, Funke admitted he was not aware of a restaurant in the area that was being leased for the $650 amount that FSB-C thought was appropriate. He mentioned some

5

experience with other restaurants, but did not point to other comparable properties or provide any other evidence on comparable rent. He simply stated that "prior experience" showed $650 was a better number.

In rebuttal, Debtor testified that her actual cost to construct the machine shed, including labor and materials, was $37,400—substantially less than Funke estimated. She noted that FSB-C never asked for a statement of construction costs before the hearing. She also reiterated there were no other comparable restaurants from which to price rent. She said she was happy to take more if the Bank had someone that could pay more. She again pointed out that FSB-C had not forwarded a single prospect to her.

In support of FSB-C's Motion for Payment from Cash Collateral, it relied on testimony from Funke. He stated his belief that FSB-C had a security interest in some of Debtor's real property and proceeds. According to him and arguments from FSB-C's counsel, this security interest entitled FSB-C to the type of ongoing adequate protection payments Debtor originally described in her July 16 Expedited **Motion** to Authorize Interim Use of Cash Collateral. As counsel for FSB-C later acknowledged, the July 22 **Order** Approving Interim Use of Cash Collateral did not require any adequate protection payments or other cash collateral distribution to FSB-C.

FSB-C also acknowledged through counsel that FSA had a first priority security interest in a grain bin in which FSB-C now claims a second security interest. FSB-C maintained that it held a first security interest in the two other grain bins that FSB-C pointed to in its October 25 Response. FSB-C expressed a belief that Debtor had received some rent for those two grain bins. FSB-C argued that it might be entitled to those rents. FSB-C offered no evidence of any rental

6

payment on the grain bins. Counsel for Debtor stated that no such rent had yet been received by the Debtor.

## DISCUSSION

**1. Debtor's Two Motions to Enter into Leases of Real Property**

FSB-C did not cite the Bankruptcy Code or a judicial opinion as the basis for its Objection to the two proposed leases. At the hearing, FSB-C orally requested protection as the holder of a security interest. The Court will liberally construe FSB-C's Objection to be a request for adequate protection of its property interest.

The Bankruptcy Code provides that the Trustee or debtor-in-possession, after notice and a hearing, may "use, sell, or lease, other than in the ordinary course of business, property of the estate." § 363(b)(1). "[A]t any time, on request of an entity that has an interest in property . . . proposed to be . . . leased, by the trustee, the court . . . shall prohibit or condition such . . . lease as is necessary to provide adequate protection of such interest." § 363(e). The existence of adequate protection is a question of fact for the court. In re Martin, 761 F.2d 472, 474 (8th Cir. 1985). It is a flexible concept designed to ensure that the creditor receives the value for which it bargained. Id.

> In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of [the property subject to the creditor's interest], and (3) determine whether the debtor's adequate protection proposal protects value as nearly as is possible against risks to that value consistent with the concept of indubitable equivalence.

Martin, 761 F.2d at 477.

For a creditor to be entitled to adequate protection under § 363(e), a creditor must (1) have an interest in the property which Debtor proposes to use, and (2) establish the value of that

7

interest. Here, FSB-C did neither. After hearing all the evidence in this case, the nature or value of FSB-C's interests remain unclear. FSB-C did not offer a note and mortgage, assignment of rents, or other description of its specific security interest as evidence at the hearing. FSB-C acknowledged its security interest is disputed. Funke testified he "believed" that FSB-C held a "first security interest in the restaurant, and a first security interest in the property where the machine shed is located." Funke testified that he "believed" FSB-C held a mortgage on the restaurant property, and the Bank had also subsequently financed Debtor's expenses for finishing the building that is the site of the restaurant. He provided nothing to support these beliefs and never gave a specific value of FSB-C's interest in either property.

Debtor's Schedule D shows that multiple parcels of real property are encumbered by mortgages in favor of FSB-C. However, from the Motions and court testimony, it is unclear which security interest serves as the basis for FSB-C's Objection. The current value of FSB-C's secured interest in either the machine shed or the restaurant is simply unclear. See 11 U.S.C. § 506(a)(1). FSB-C also entirely failed to address, let alone submit evidence on, the second part of the adequate protection test—the risk to secured creditor's value by the proposed use. FSB-C again simply stated, without any supporting documentation or admissible evidence, that it "believed" both properties might be able to get higher rent after more marketing and advertising. Without more, these assertions are simply speculation and are insufficient to sustain FSB-C's burden of proof.

Even if FSB-C had established its interest, the value of its interest in the property, and the risks to its interest, Debtor has presented sufficient responsive evidence that the proposed rents are acceptable to maintain the properties' values. See In re Weiser, Inc., 74 B.R. 111, 115 (Bankr. S.D. Iowa 1986). As noted, there was no contrary evidence and certainly no showing that

the value of either property is decreasing because of the rental agreement. Admittedly, the market for commercial real estate in the rural area near Hazelton, Iowa is very small. However, FSB-C offered no comparable rentals of any kind—from other counties or any other service—to help the Court determine whether FSB-C is adequately protected. The fact remains that Debtor is getting tenants into properties that currently are vacant. Debtor's testimony that both tenants will pay utilities, and the machine shed tenant will provide for additional heating and electrical equipment is further protection of any secured creditor's interest in these properties. For all these reasons, the Court approves the two leases.

   **2. FSB-C's Motion for Order of Payment from Cash Collateral**

FSB-C again offered no citation to the Code or case law in support of its Motion for a cash collateral payment. The Court is unclear whether there is any authority for such a motion. Even if such a motion can be made, there is no support for it in the record. It became apparent at the hearing that FSB-C was proceeding on two wrong assumptions. First, it believed the Court had previously authorized Debtor to use cash collateral to make payments to Wells Fargo and FSB-C. Second, it believed the Debtor was receiving rent for grain bins, which FSB-C claimed it was entitled to.

As the parties confirmed during the hearing, the Court never ordered the use of cash collateral on the terms FSB-C believed. FSB-C simply and erroneously relied on Debtor's July 16 Expedited **Motion** to Authorize Interim Use of Cash Collateral (and proposed order attached thereto), which requested use of cash collateral for such payments. However, after the hearing on Debtor's July 16 Motion, the Court **ordered** that the Debtor should not be required to make adequate protection payments to FSB-C. FSB-C needed to first establish the nature of its interest and its entitlement to adequate protection payments. It never did so.

9

The hearing also helped to clarify the issue of rents received on grain bins. FSB-C offered no evidence of "rents" received on grain bins let alone its entitlement to any such rents. Debtor's counsel stated that Debtor had not received rent for the grain bins in question. FSB-C never responded to that assertion. It appears FSB-C was simply misinformed and proceeded on that faulty information. For all these reasons, the Court denies FSB-C's Motion for Cash Collateral Payment.

**WHEREFORE,** Debtor's Motion to Enter into Lease of Real Property to John Shannon and Motion to Lease Real Property to Amy Williams are GRANTED, and Creditor's Motion for Order of Payment from Cash Collateral is DENIED.

Dated and Entered: December 1, 2010

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE