IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| JODENE AUDREY PUFF, ) | |
| ) | Bankruptcy No. 10-01877 |
| Debtor. ) | |

**RULINGS ON OBJECTION TO THE
THIRD AMENDED DISCLOSURE STATEMENT**

This matter is before the Court on objections to Debtor's Third Amended Disclosure Statement. Creditor Wells Fargo Financial Leasing (WFFL) and Farmers Savings Bank (FSB) filed objections. This Court held an evidentiary hearing on the issues of valuation and some related arguments on feasibility and took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

**STATEMENT OF THE CASE**

WFFL and FSB objected to Debtor's Third Amended Disclosure Statement. WFFL made two separate arguments regarding the sufficiency and adequacy of the Third Amended Disclosure Statement. FSB raised similar objections and added arguments about the information in the Disclosure Statement being insufficient to determine feasibility.

The Court finds that the majority of the arguments made by the creditors here raise issues better addressed at confirmation.  The Court sustains, in part, WFFL's and FSB's objections to the lack of disclosure of the competing valuations on the parcels of property involved in the reorganization and the question of whether WFFL holds a true lease or disguised security agreement.  The Court sets the final hearing on the Fourth Amended Disclosure Statement with the hearing on Plan Confirmation under 11 U.S.C. § 105(d)(2)(B)(vi).

**PROCEDURAL BACKGROUND AND FACTUAL
RECORD FROM DISCLOSURE STATEMENT HEARING
AND AUTOMATIC STAY HEARING**

Debtor filed a Third Amended Disclosure Statement in this Chapter 11 case on March 18, 2011.  WFFL and FSB raised the objections stated above.  Both creditors filed objections on their own behalf, not on behalf of unsecured creditors or equity holders.

At the request of the parties, the Court held an evidentiary hearing to address the objections.  The focus of the hearing was the valuation of the numerous parcels of property involved in Debtor's Chapter 11 reorganization.  Debtor has both residential and commercial property in the rural area surrounding Hazleton, Iowa.  Debtor filed this Chapter 11 in her individual capacity and, therefore, the treatment,

use, and valuation of both the residential and commercial properties are at issue in this case.

The Court received testimony from Debtor, Debtor's expert witnesses on valuation, an officer of FSB, and expert witnesses on valuation from both WFFL and FSB. The evidence disclosed a sharp and significant difference in the valuation between Debtor and her secured creditors on the secured property in her reorganization. The disagreement is meaningful because it affects the treatment and ultimate payment to both WFFL and FSB under the Plan. Secured claims are largely to be paid in full. Unsecured claims will receive approximately one cent on the dollar. The valuation of the property determines the amount of security available upon which the security interests of WFFL and FSB could attach. Under Debtor's valuation, the secured claims of both WFFL and FSB are reduced significantly from what each of them claim, resulting in a larger unsecured claim for each. Under the valuations offered by WFFL and FSB, their secured claims would be greater because of the higher valuations. This would result in smaller unsecured claims paid at the nominal rate.

Both WFFL and FSB (by virtue of their joinder of WFFL's arguments) also argue that Debtor erroneously treats some of WFFL's claims as security agreements instead of "true leases." WFFL and FSB argue that some or all of WFFL's claims

3

are in fact true leases and not secured claims.   This is significant because "true leases" would require either substantially greater payments than those offered on the secured portions of WFFL's claims, or repossession by WFFL of property critical to the reorganization if those leases were ultimately rejected.   In sum, if WFFL's obligations are true leases and not secured claims, the Plan proposed by Debtor may not be feasible.

The Court took the matter under advisement.   WFFL, FSB, and Debtor all filed post-hearing briefs.   WFFL and FSB shifted their arguments slightly to focus on the lack of adequate information available to general unsecured creditors.   Both WFFL and FSB argued that disclosure of at least the competing valuations and the possibility that WFFL was holding true leases instead of security agreements was necessary to allow unsecured creditors to decide on how to vote on the Plan.   Both WFFL and FSB also asked the Court to find specifically that their valuations for the property were correct and should be disclosed to all parties.   They believe such findings would essentially render the Plan nonfeasible.

While this issue was under advisement, creditor Chase Home Finance, LLC (Chase) filed a Motion for Relief from Stay on April 23, 2011.   It sought relief from the stay to proceed against one of the residential properties held by Debtor.   Debtor indicated in her Plan that she would not be using that property for her reorganization.

Debtor resisted the Motion for Relief from Stay. She indicated that the property would now be used for the reorganization because of new developments. A summary of those proceedings is provided in the Court's June 14, 2011 Order Denying Chase's Motion for Relief from Stay. A skeletal recitation of those facts follows.

The Court held the preliminary hearing on Motion for Relief from Stay on May 13, 2011. Chase made its arguments including that the property was Debtor's primary residence, no adequate protection had been offered to Chase, and there was no equity in the property. Chase also pointed out that Debtor's Plan and Disclosure Statement indicated that the property would be abandoned. Debtor said there had been an important new development. She now had a paying tenant for the property, which was not her residence any longer. Debtor stated that she intended to amend the Plan and Disclosure Statement to show that she would not be abandoning the property. She also noted her intent to make a number of additional alterations to the Plan and Disclosure Statement which might affect the adequacy of disclosure issues before the Court. Counsel for Debtor indicated that the new modified plan and disclosure statement would be filed soon.

The Court held the final hearing on June 8, 2011. Debtor did not file a modified plan and/or disclosure statement before the hearing. The Court held the

hearing and specifically inquired of Debtor's counsel about the status of the amended plan and disclosure statement that Debtor said she would be filing at the time of the preliminary hearing. Debtor's counsel indicated the amended plan and disclosure statement would be filed in the next week. He further indicated that these amended filings would attempt to cure the problems raised by the creditors at the Disclosure Statement hearing. The Court noted that it would continue to withhold ruling on Debtor's Third Amended Disclosure Statement until the Fourth Amended Disclosure Statement was filed, if it was filed shortly after that hearing. No amended disclosure statement and/or plan have yet been filed. Two weeks have passed and the Court believes it is time to rule on the matter.

## CONCLUSIONS OF LAW

The requirements for and adequacy of disclosure statements are governed by § 1125(b) of the Bankruptcy Code which states:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

"Adequate information" is defined to mean:

6

> **information** of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . . **that would enable a hypothetical reasonable investor typical of holders of claims** or interests of the relevant class to **make an informed judgment about the plan**.

11 U.S.C. § 1125(a)(1) (emphasis added).

The hypothetical reasonable investor is also defined:

> "investor typical of holders of claims or interests of the relevant class" means investor having-
>
> (A) a claim or interest of the relevant class;
>
> (B) such a relationship with the debtor as the holders of other claims or interests of such class generally have; and
>
> (C) such ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have.

11 U.S.C. § 1125(a)(2).  It is thus specifically presumed that such an investor will have the "ability to obtain such information from sources other than the disclosure required by this section as holders of claims or interests in such class generally have."  In re The New Power Company, 438 F.3d 1113, 1118 (11th Cir. 2006) (quoting 11 U.S.C. § 1125(a)(2)(C)).

"Numerous courts have prescribed a list of disclosures which typically should be included in a disclosure statement."  In re Cardinal Congregate I, 121 B.R. 760,

765 (Bankr. S.D. Ohio 1990) (citing In re Dakota Rail, Inc., 104 B.R. 138 (Bankr. D. Minn. 1989); In re Scioto Valley Mortgage Co., 88 B.R. 168 (Bankr. S.D. Ohio 1988); In re S.E.T. Income Properties, III, 83 B.R. 791 (Bankr. N.D. Okla. 1988); In re Jeppson, 66 B.R. 269 (Bankr. D. Utah 1986); In re Metrocraft Publishing Servs., Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984); In re Malek, 35 B.R. 443 (Bankr. E.D. Mich. 1983)). These cases and others have developed a list of factors which may be necessary to meet the statutory requirement of adequate information. These factors are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates.

8

Cardinal Congregate I, 121 B.R. at 265–66 (citing Scioto Valley, 88 B.R. at 170–71); see also In re United States Brass Corp., 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (citing In re Metrocraft, 39 B.R. at 568).   Disclosure of all factors, however, is not necessary in every case.  Id.   Cases have specified that these factors are only a general "yardstick" and need to be modified as the circumstances and size of each case warrant.   Cardinal Congregate I, 121 B.R. at 765; see also In re Keisler, 2009 WL 1851413 *4 (Bankr. E.D. Tenn. June 29, 2009).   "It is . . . well understood that certain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case."  In re Phoenix Petroleum, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

The legislative history of 11 U.S.C. § 1125(a)(1), provides for this case-specific approach:

> Both the kind and form of information are left essentially to the judicial discretion of the court, guided by the specification in subparagraph (a)(1) that it be of a kind and in sufficient detail that a reasonable and typical investor can make an informed judgment about the plan. The information required will necessarily be governed by the circumstances of the case.

In re River Village Assoc., 181 B.R. 795, 804 (Bankr. E.D. Pa. 1995) (citing legislative history of 11 U.S.C. § 1125(a)(1)).   "The determination of what is adequate information is subjective and made on a case by case basis.   This

9

determination is largely within the discretion of the bankruptcy court." Phoenix Petroleum, 278 B.R. at 393 (quoting Matter of Texas Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988) and citing Kirk v. Texaco, Inc., 82 B.R. 678, 682 (Bankr. S.D.N.Y. 1988)).  The legislative history continues:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.

Id. (quoting H.R. Rep. No. 595 at 408–409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365).

In most general terms, "the adequacy of disclosure is dependent upon various factors including: the size and complexity of the chapter 11 case, the type of plan proposed, the type of creditors and claims impaired by the proposed plan, and the access by impaired creditors to relevant information from other sources." Id. (quoting In re Monroe Well Service, Inc., 80 B.R. at 324, 330 (Bankr. E.D. Pa. 1987)). See also *5 Lawrence P. King, Collier on Bankruptcy* § 1125.03[1], 1125–22 (courts should "consider the needs of the claims or interests of the class as a whole and not the needs of the most sophisticated or least sophisticated members of a particular class"). Thus, "[t]here will be a balancing of interests in each case. In

reorganization cases, there is frequently great uncertainty.  Therefore the need for flexibility is greatest."  In re Bermuda Bay, LLC and ABKDH, LLC, 2009 WL 5218071 (Bankr. E.D. Va. Dec. 31, 2009) (quoting H.R. Rep. No. 95-595 at 409).

The standard for disclosure is, thus, flexible, and what constitutes "adequate information" in any particular situation is determined on a case-by-case basis.  In re PC Liquidation Corp., 383 B.R. 856, 866 (Bankr. E.D.N.Y. 2008) (citing In re Aspen Limousine Service Inc., 193 B.R. 325, 334 (Bankr. D. Colo. 1996); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988)).  The determination of what constitutes adequate information is largely within the discretion of the bankruptcy court.  PC Liquidation Corp., 383 B.R. at 866 (citing In re A.H. Robins Co., Inc., 880 F.2d 694, 697 (4th Cir. 1989); In re El Comandante Management Co., LLC, 359 B.R. 410, 414 (Bankr. D. P.R. 2006); Matter of Texas Extrusion Corp., 844 F.2d at 1157; see also, e.g., Kirk v. Texaco, 82 B.R. at 682.  "[A] disclosure statement is not required 'to speculate as to future uncertainties, such as the consequences of possible outcomes of pending litigation.'" PC Liquidation Corp., 383 B.R. at 866 (citing In re Stanley Hotel, Inc., 13 B.R. 926, 935 (Bankr. D. Colo. 1981); In re CDECO Maritime Const. Inc., 101 B.R. 499, 501 (Bankr. N.D. Ohio 1989)).

11

"Courts generally have agreed that it may, on occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible." Phoenix Petroleum Co., 278 B.R. at 394 (citing Cardinal Congregate I, 121 B.R. at 765; Monroe Well Service, Inc., 80 B.R. at 324; In re Pecht, 57 B.R. 137 (Bankr. E.D. Va. 1986)). "Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed." Phoenix Petroleum Co., 278 B.R. at 394 (citing In re Pecht, 57 B.R. at 138). However, "[s]uch action is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected." Cardinal Congregate I, 121 B.R. at 762 (quoting Monroe Well Service at 80 B.R. at 333 (footnote omitted)).

In analyzing disclosure statements, courts should not lose sight of the fact that:

> [t]he purpose of the disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives. It has been held that a disclosure statement's internal inconsistencies should not necessarily bar its approval and may simply illustrate to readers of the disclosure statement why they should not vote for the plan as proposed.

12

In re U.S. Brass Corp., 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) (quoting Stanley Hotel, Inc., 13 B.R. at 930). Generally, even where a "disclosure statement could have included more information, . . . a disclosure statement need not be perfect and may be approved if the information is reasonable in the circumstances." In re Price Funeral Home, 2008 WL 5225845 at *2 (Bankr. E.D.N.C. Dec. 12, 2008).

## ANALYSIS

WFFL and FSB raised essentially identical arguments regarding the sufficiency of information provided in the Disclosure Statement. They both argued about Debtor's valuation of the parcels of property and the failure to disclose the possible issue arising from Debtor's proposed treatment of WFFL's claim as a security interest instead of a true lease. Both WFFL and FSB are, however, the type of creditors that are "presumed to have the ability to obtain such information from sources other than the disclosure required by this section . . . ." New Power Company, 438 F.3d at 1118 (quoting 11 U.S.C. § 1125(a)(2)(C)). It is apparent here from both of the creditors' filings and the substantial information they have provided to the Court that they, in fact, both have all the information about which they seek disclosure. At a minimum, they have both been "active participants" in the proceedings. They are both creditors that have "had access to adequate information regarding the treatment of [their] claims and interests" sufficient to

13

satisfy disclosure requirements.    New Power Co., 483 F.3d at 1120–21.    The Court finds that the "additional information" that they seek will not help either of them to form an opinion on how to vote on the Plan.    It is clear from the record that both of them simply disagree with their treatment in the Plan and intend to vote no even if all the information they seek from Debtor in the Disclosure Statement is ultimately provided.

Their arguments that the additional information they seek disclosure of is critical to determine Plan feasibility suffers from the same and an additional flaw. Feasibility of the Plan is specifically an issue for the confirmation stage.    See 11 U.S.C. § 1129.    In fact, underlying much of the argument and presentation of evidence at this stage is simply a preview of confirmation arguments on feasibility. The Court will decide those issues there, not here.

In post-hearing briefing, WFFL and FSB changed their approach slightly and argued that the additional information they sought disclosure of was for other unsecured creditors.    While the Court believes there is some legal infirmity in attempting to rely on arguments that the other interested parties have not made, the Court sets those concerns aside for the purpose of this opinion.    The Court agrees with both WFFL and FSB that general unsecured creditors — specifically treated as a separate class under the proposed Plan — may not be aware of the valuation issues

14

and/or the true lease/security agreement issues that have been raised and argued. It is conceivable that unsecured creditors would find the disclosure of these facts useful in making their decision on how to vote on the Plan.

The disclosure statement rules and standards intend for disclosure of the maximum amount of information that is relevant and feasible. As noted, courts use an extensive list of factors to determine whether there has been a disclosure of adequate information. The second factor specifically notes that there should be "a description of the **available assets and their value**." Cardinal Congregate I, 121 B.R. at 265 (emphasis added).

While the Court concludes that additional information on the disputed valuation is appropriate, the Court does make any final decision on valuation on any of the assets. Instead, the Court adopts and incorporates the alternative suggestions of WFFL and FSB. Debtor should be required to disclose that there are serious valuation disputes, that conflicting testimony and evidence has been offered, and that there are competing appraisals and valuations for both sides. The Court believes that it is appropriate for Debtor to disclose the specific values offered by each side on each parcel of property. The Court believes such disclosure will provide sufficient information for all parties to determine how they will vote on the plan.

15

The Court reaches a similar conclusion on the "true lease" versus "security agreement" issue. The Court notes that neither side has briefed the issue or even argued it in any great detail. It has only been raised by basic positional argument and response. It is a complicated issue. <u>In re Warne</u>, 2011 WL 1303425 at *2 (Bankr. D. Kan. Apr. 4, 2011) ("Much ink has been spilt over the intriguing question of what is a true lease."). At this point in the proceedings, the Court believes it is sufficient for Debtor to note in her Disclosure Statement that she is intending to treat much or all of WFFL's claim as a security agreement and not a true lease. The Disclosure Statement should also state that if the Court ultimately determines that the claims of WFFL are in whole or in part based on "true leases," this could change both the analysis of feasibility and the ultimate payout available to unsecured creditors.

Based on the above analysis, the Court concludes that the Disclosure Statement is approved in all regards except for those specifically noted above. Debtor has ten (10) days to amend her Disclosure Statement on those specific issues. When those amendments are made, Debtor can move into the process of solicitation for confirmation as provided under the Bankruptcy Code. Under the authority provided in § 105(d)(2)(B)(vi), the Court will hear any further objections on the

16

amended disclosure statement limited to those specific areas discussed above — and no others — at the hearing on confirmation.

**WHEREFORE**, Debtor's Third Amended Disclosure Statement is approved in all regards except for the issues noted above.

**FURTHER**, Debtor has ten (10) days from the date of this Ruling within which to amend her Disclosure Statement to address the areas of deficient disclosure discussed above.

**FURTHER**, the Court will hear objections limited to those matters at the same time as the confirmation hearing.

Dated and Entered: June 30, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE